UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| LINDA JOHNS, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 04 C 5563 |
| | ) | |
| LAIDLAW EDUCATION SERVICES, | ) | Judge Rebecca R. Pallmeyer |
| | ) | |
| Defendant. | ) | |

## MEMORANDUM OPINION AND ORDER

Plaintiff Linda Johns worked as a bus driver for Defendant Laidlaw Educational Services ("Laidlaw") until an accident in June 2003 rendered her unable to use her right arm and shoulder without pain. For some months, Laidlaw assigned Johns to light-duty work in its office or as a bus monitor. In May 2004, believing Ms. Johns had been released by her doctor to full duty, Laidlaw terminated Plaintiff for refusing her job assignment. Proceeding *pro se*, Ms. Johns alleges in this lawsuit that Laidlaw discriminated against her in violation of the Americans with Disabilities Act ("ADA"), 42 U.S.C § 12101 *et seq.* when it terminated her employment on May 18, 2004. Laidlaw moves for summary judgment on Ms. Johns's claim. For the reasons set forth below, Defendant's motion is granted.

## FACTS

Defendant Laidlaw has submitted a Statement of Uncontested Material Facts pursuant to this court's Local Rule 56.1. Despite being advised of the steps necessary to oppose this motion, Ms. Johns has submitted only her own unsworn statements and several documents. The court has reviewed these documents carefully and, where they create a dispute of fact, has construed them in Plaintiff's favor.

On August 16, 2002, Ms. Johns applied for a bus driver position with Laidlaw. (Deposition of Linda Johns (hereinafter, "Johns Dep."), Exhibit A to Defendant's Rule 56.1 Statement, at 37.) After she acquired her commercial driver's license in November 2002, Laidlaw offered Ms. Johns a position as a school bus driver, which she accepted. (Johns Dep. at 39, 41). During the course of her employment with Laidlaw, Ms. Johns was involved in three motor vehicle accidents; one of these occurred on November 11, 2002, and a second on February 27, 2003. (Johns Dep. at 51, 58.) On April 15, 2003, Ms. Johns suffered an injury to her shoulder; as this court understands this incident, it occurred either as a result of the hood of the bus unexpectedly flying open, or as a result of Ms. Johns's attempts to pull the hood shut again. (*Id.* 59-61.) Doctors at the Ingalls Clinic diagnosed Ms. Johns as suffering from a shoulder sprain and recommended light duty work. Laidlaw did assign Ms. Johns to light duty, "[s]itting on the bus monitoring it." (*Id.* at 74-75.) She returned to full duty on June 3, 2003. (*Id.* at 76-77.)

On June 3, 2003, the same day she returned to full duty, Ms. Johns was involved in her third accident when the driver of a car rear-ended her bus while it stood stopped at a railroad crossing. (Johns Dep. at 78.) Ms. Johns asserts that this accident exacerbated her shoulder injury; when she complained of continued pain, staff at the Ingalls Clinic ordered an MRI. (*Id.* at 82.) Some time after undergoing the MRI, Ms. Johns sought treatment with James R. Ingram, D.O., of the Bone & Joint Surgeons Ltd. (*Id.* at 91-92.) Dr. Ingram diagnosed a possible torn rotator cuff and muscle tears, and performed surgery to repair a rotator cuff tear on September 15, 2003. (Johns Dep., p. 92, 94, 100.) On September 24, 2003, Dr. Ingram released Ms. Johns to work with the following conditions:

> No lifting greater than 5lbs. for 21 days with right arm
> Sedentary work only for 21 days.
> Must wear immobilizer for 21 days

(Johns Dep. at 106-107, Medical Release/Restriction Form, Exhibit 5 to Def.'s 56.1.). Dr. Ingram restricted Ms. Johns from working at all until December 2003. As memorialized in a report he prepared on December 17, 2003, Ms. Johns was still experiencing pain at that time, but he gave her "a release returning her to work four hours a day" with restrictions. (Bone & Joint Surgeons, Ltd., memorandum, Exhibit 17 to Def.'s 56.1.) Ms. Johns did return to light duty work, which she described as "[s]itting in the office answering phones, dispatching." (Johns Dep. at 121-22.) According to a form Dr. Ingram completed on January 7, 2004, Ms. Johns was able as of that date to drive her own vehicle one to two hours per day and to ride in a motorized vehicle for two hours per day, but was not permitted to drive a commercial vehicle. (Estimated Functional Capacity Evaluation, Jan. 7, 2004, Exhibit 6 to Def.'s 56.1.)

Dr. Brian Cole, M.D., performed an independent medical evaluation of Ms. Johnson on February 9, 2004. He concluded that she had suffered a work-related injury but that her abilities were "probably very close to a job match," and that, in the absence of any "safety issues," he "would return her to full duty." (Letter of Brian J. Cole, M.D., Feb. 9, 2004, Exhibit 8 to Def.'s 56.1.) When Plaintiff again saw Dr. Ingram on February 11, 2004, he reviewed Dr. Cole's findings and suggested she follow Dr. Cole's recommendation of "an on job site functional capacity evaluation." Ms. Johns "vehemently refused" this suggestion. (Dr. Ingram Memorandum, Feb. 11, 2004, Exhibit 7 to Def.'s 56.1.) Ms. Johns acknowledged that Laidlaw personnel requested that she attempt to drive a bus as part of an evaluation of her work abilities, but she refused; she explained, "I wasn't going to get on a bus and drive it. I wasn't going to hurt myself anymore. For what?" (Johns Dep., at 113.)

3

Although Dr. Ingram's memorandum indicates that he did review Dr. Cole's findings, Ms. Johns testified that she did not show Dr. Cole's letter to Dr. Ingram because Dr. Ingram "hadn't okayed me to go back to driving so I wasn't going to get on [a school bus]." (*Id.* at 118.) In fact, on April 21, 2004, Dr. Ingram completed a medical report in which he noted Ms. Johns's diagnosis of "bicipital tendonitis" and that she could return to work with "current restrictions" – presumably the same restrictions imposed on her months earlier. (Medical Release/Restriction Form, April 21, 2004, Exhibit 9 to Def.'s 56.1.) There is no evidence that this form was forwarded to Laidlaw.

Laidlaw evidently concluded that Dr. Cole found Ms. Johns capable of returning to work as a bus driver. In a letter to Plaintiff dated May 4, 2004, a claims agent for Laidlaw stated that Dr. Cole "determined you are capable of full duty work and need no additional treatment." Accordingly, the agent directed that Ms. Johns "return to work as a bus driver immediately." (May 4, 2004 letter of Claims Specialist Kevin Bigenwald, Exhibit 19 to Def.'s 56.1.) Ms. Johns met with Laidlaw Branch Manager Linda Brunner on May 4. She denied that she had a medical release to return to full duty and refused to sign the letter directing her to return to work until she had seen her doctor and her attorney. (Johns Dep. at 124-25.) Ms. Johns had no further contact with Laidlaw. (Johns Dep., at 152-53.) Instead, she filed a charge of discrimination with the EEOC on May 14, 2004. (Def.'s 56.1 ¶ 47.) By letter dated May 18, 2004, Laidlaw Branch Manager Brunner terminated Ms. Johns's employment. (May 18, 2004 letter, Exhibit 20 to Def.'s 56.1.) After receiving a right-to-sue notice from the EEOC, Plaintiff filed this lawsuit on August 24, 2004.

## DISCUSSION

**A.     Summary Judgment Standard**

A motion for summary judgment will be granted if "there is no genuine issue as to any

4

material fact and that the moving party is entitled to a judgment as a matter of law." FED. R. CIV. P. 56(c). In determining whether there is a genuine issue of fact, the court must view the evidence and draw all reasonable inferences in favor of the party opposing the motion. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 255 (1986); *Bennington v. Caterpillar Inc.,* 275 F.3d 654, 658 (7th Cir. 2001). Where the non-moving party bears the burden of proof at trial, summary judgment should be granted when "there is an absence of evidence to support the nonmoving party's case." *Celotex Corp. v. Catrett,* 477 U.S. 317, 325 (1986). Furthermore, the moving party may "may satisfy Rule 56's burden of production" by demonstrating "that the nonmoving party's evidence is insufficient to establish an essential element of the nonmoving party's claim." *Id.* at 331.

**B.     Analysis**

   **1.     Plaintiff is Not a Qualified Individual with a Disability**

The Americans with Disabilities Act defines a person entitled to the Act's protections as "an individual with a disability who, with or without reasonable accommodation, can perform the essential functions of the employment position that such individual holds or desires." 42 U.S.C. § 12111(8); *DeLuca v. Winer Indus., Inc.,* 53 F.3d 793, 798 (7th Cir. 1995). Defendant Laidlaw asserts it is entitled to summary judgment in this case because Plaintiff does not meet the statutory definition. She is unable to drive a school bus, the essential function of her job.

Laidlaw's position is amply supported in this record. Ms. Johns herself insists she is unable to perform the functions of a school bus driver. She testified that her physical restrictions "pretty much stayed the same the whole course before they fired me, . . . no driving." (Johns Dep. at 107.) She did not even discuss the possibility of driving a bus with Dr. Ingram, and "wouldn't have [discussed this with him] because of the pain that I am still in." (*Id.* at 108.) To drive a school bus

5

with this kind of pain would, in Ms. Johns's view, make her "look like the fool" because of the risk that children riding in the school bus might be killed. (*Id.*)  Because of her limitations, Ms. Johns acknowledged that she "vehemently refused" to "get on that bus and drive." (*Id.* at 112.)  She explained, "I wasn't going to get on a bus and drive it.  I wasn't going to hurt myself anymore.  For what?"  (*Id.* at 113.)  "I wasn't going to get on a school bus." (*Id.* at 118.)

Although Laidlaw concluded that Dr. Cole had released Ms. Johns to full duty, she herself denies that Dr. Cole ever took such a position (*id.* at 118), and it is uncontested that in Dr. Ingram's view, Ms. Johns's restrictions continued at least into April 2004.  As of May 4, when Laidlaw directed Ms. Johns to resume work, Ms. Johns testified, "My doctor had just seen me, and he didn't release me back to full duty." (*Id.* at 125.)  Asked at her May 2005 deposition whether she was at that point able to drive a bus, Ms. Johns responded: "[N]o, I don't think I will ever be able to drive a bus again, no. . . . I wouldn't attempt it because of the pain."  (*Id.* at 133.)  She made it clear, as well, that no accommodation would change this: asked, "Is there anything that Laidlaw could have done that would have assisted you to drive the bus?," Ms. Johns responded, "No.  They can't stop my pain so no." (*Id.* at 164.)

It is, thus, undisputed on this record that Ms. Johns is unable, with or without reasonable accommodation, to "perform the essential functions of the employment position." *See* 42 U.S.C. § 12111(8); *DeLuca*, 53 F.3d at 798 n. 3.  As the Seventh Circuit has explained repeatedly, "The ADA protects only disabled individuals who can perform the essential functions of their position." *Rooney v. Koch Air, LLC*, 410 F.3d 376, 382 (7th Cir. 2005).  Because the plaintiff in *Rooney* was unable to perform job site visits for his customers, an essential function of his position as a customer assurance manager, the Seventh Circuit concluded that the district court properly granted summary

6

judgment on his ADA claim, even though plaintiff was capable of performing many other duties. Here, there is no doubt that Ms. Johns is unable to perform the central essential function of her own job.

    **2.    Laidlaw Did Not Violate its Duty to Accommodate**

As noted, Ms. Johns has acknowledged that there is nothing Laidlaw could have done to enable her to drive a bus. In her response to Defendant's motion for summary judgment, she has devoted most of her attention to substantiating her injuries, describing the resulting pain, and noting the employment limitations imposed by her condition. She notes, for example, that her pain is near constant, even when she does not exert herself and asks, "Again, if I'm not overly exerting my right shoulder/arm or not using it at all who would want to hire me with these limitations?" (Plaintiff's Response, Appendix 3.)

Ms. Johns's theory appears to be that, because her shoulder pain is the result of an on-the-job injury, Laidlaw has an obligation to employ her in some capacity permanently. However wise this may be as a matter of public policy, it is not the law. The ADA requires an employer to provide a qualified individual with a reasonable accommodation. *Jackson v. City of Chicago*, 414 F. 3d 806, 812 (7th Cir. 2005), citing *Rehling v. City of Chicago*, 207 F.3d 1009, 1014 (7th Cir.2000). The Act does not, however, require the employer to "manufacture a job that will enable the disabled worker to work despite his disability," *Hansen v. Henderson*, 233 F.3d 521, 523 (7th Cir. 2000), nor is an employer required to assign a worker permanently to a temporary light-duty job. *DeVito v. Chicago Park Dist.*, 270 F.3d 532, 534 (7th Cir. 2001), *citing Hendricks-Robinson v. Excel Corp.*, 154 F.3d 685, 697 (7th Cir. 1998). *See also Watson v. Lithonia Lighting*, 304 F.3d 749, 752 (7th Cir. 2002) ("A

person is 'otherwise qualified' within the meaning of the ADA only if she can perform one of the regular jobs (with or without an accommodation).")

Laidlaw did accommodate Plaintiff's condition for a period of time by permitting her to work as a bus monitor or assigning her to do office work. This does not establish that a light-duty bus monitor position was available indefinitely, however, and there is no indication in this record that Laidlaw had any permanent bus monitor positions. Plaintiff notes that on May 4, 2004, when Branch Manager Linda Brunner directed her to return to work as a bus driver after refresher training, she advised that "[s]ince we do not have open routes to bid on at this time, you [Ms. Johns] will be assigned as a monitor" at a pay rate commensurate with seniority, and would be permitted to bid on bus routes as they became available. (Plaintiff's Response, Appendix 1.) The court is unwilling to infer, from Ms. Brunner's letter, that a bus monitor position was available as a permanent accommodation.

Even if it were, the record does not support Plaintiff's contention that Laidlaw violated the ADA by failing to assign her to such a position. Plaintiff believes that Laidlaw's managers were mistaken in their belief that she was capable of returning to full duty in May 2004. But she admits that she took no action to correct the misunderstanding. Defendant asserts that Ms. Johns never provided a copy of Dr. Ingram's April 2004 medical findings to Laidlaw (Def.'s 56.1 ¶ 39), and Plaintiff has not rebutted this assertion. Asked at her deposition whether she shared Dr. Cole's findings with Dr. Ingram, she responded, "No, I didn't because I wasn't going to get on a school bus." (Johns Dep., at 118.) When she met with Ms. Brunner on May 4, she refused to sign the letter directing her to proceed with training and told Ms. Brunner she would first need to confer with her

8

attorney and physician. (*Id.* at 125.) She did not show the letter to Dr. Ingram, however, and in fact never saw him again. (*Id.* at 125, 127.) Ms. Johns did call Dr. Ingram's nurse and her own attorney (*id.* at 126), but she did not communicate again with anyone at Laidlaw about her physical abilities or her desire to return to work as a monitor (or in any capacity). Instead, she simply "wait[ed] for awhile to see if anyone would call me and say well, we made a mistake, you are still, you know, able to work light duty . . . ." (*Id.* at 128.) On May 14, she filed her charge of discrimination with EEOC.

In order to determine whether a worker's disability can be accommodated, the ADA requires that the employer and employee "engage in an interactive process." *Baert v. Euclid Beverage, Ltd.*, 149 F.3d 626, 633 (7th Cir. 1998). If Ms. Johns had established that Laidlaw failed to provide a reasonable accommodation for her disability, the employer is "liable only if it bears responsibility for the breakdown of the interactive process." *E.E.O.C. v. Sears, Roebuck & Co.*, 417 F.3d 789, 797 (7th Cir. 2005), citing *Beck v. Univ. of Wisc. Bd. of Regents*, 75 F.3d 1130, 1137 (7th Cir.1996). As the *Beck* court explained, there is no "hard and fast rule" for determining who is responsible for a breakdown in the interactive process, *Beck*, 75 F.3d at 1135, but when the parties are "missing information . . . that can only be provided by one of the parties, . . . the party withholding the information may be found to have obstructed the process." *Id.* at 1136. *See also Jackson*, 414 F.3d at 813.

Ms. Johns admittedly made no effort to facilitate communication between Dr. Ingram and Dr. Cole or Laidlaw. After she received the letter notifying her of Dr. Cole's determinations, she never visited Dr. Ingram and made no attempt to forward his findings to Laidlaw. If Laidlaw had some duty to return Ms. Johns to light duty work, the court concludes it did not violate the ADA

9

here, where it was Ms. Johns, not her employer, who was responsible for the breakdown in the interactive process.

## CONCLUSION

Defendant's motion for summary judgment (26) is granted.

ENTER:

Dated: March 21, 2006

_____
REBECCA R. PALLMEYER
United States District Judge